United States Courts Southern
District of Texas
FILED

*11/19/2021*

Nathan Ochsner, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § § § | |
| v. § § § | Criminal No. **4:21-cr-554** |
| **JESUS ACOSTA PEREZ,** § § § | |
| **Defendant.** § | |

## INFORMATION

THE UNITED STATES CHARGES:

### GENERAL ALLEGATIONS

At all times material to this Information:

### The Paycheck Protection Program

1. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

2. In order to obtain a PPP loan, a qualifying business submitted a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application (Small Business Administration ("SBA") Form 2483), the small business (through its authorized representative) was required to provide, among other things, its: (a) average monthly

payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation confirming their payroll expenses.

3. A PPP loan application was processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies. While it was the participating lender that issued the PPP loan, the loan was 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

4. PPP loan proceeds were required to be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a defined portion of the PPP loan proceeds on payroll expenses.

### The Defendant, Related Entities and Individuals

5. Defendant **JESUS ACOSTA PEREZ** ("**PEREZ**") was a resident of Houston, Texas and was the owner of Acosta Diesel Repair LLC ("ADR"), a Texas Limited Liability Company, and Shield Trucking LLC ("Shield"), a Texas Limited Liability Company.

6. Co-Conspirator 1 ("CC-1") was a resident of Richmond, Texas.

### COUNT ONE
### (18 U.S.C. § 371 - Conspiracy)

7. Paragraphs 1 through 6 of this Information are re-alleged and incorporated by reference as though fully set forth herein.

8. Beginning in or around April 2020, and continuing until in or around October 2020, in the Houston Division of the Southern District of Texas, and elsewhere, the defendant,

**JESUS ACOSTA PEREZ**

knowingly and willfully, that is, with the intent to further the objects of the conspiracy, conspired and agreed with CC-1 and other individuals, known and unknown to the United States, to commit certain offenses against the United States, namely: to knowingly and intentionally devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and to transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice to defraud, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE CONSPIRACY

9. It was the purpose of the conspiracy for **PEREZ** and his co-conspirators to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent applications for PPP loans and (b) laundering the proceeds from the PPP loans in order to conceal and disguise the true nature and source of the loan proceeds.

## MANNER AND MEANS OF THE CONSPIRACY

10. The manner and means by which **PEREZ** and his co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

11. As part of the scheme, CC-1 informed **PEREZ** that CC-1 knew an accountant who could obtain government loans on behalf of **PEREZ**'s companies, ADR and Shield. **PEREZ** provided CC-1 with information about his companies in order to obtain the loans.

12. In furtherance of the scheme, **PEREZ** and his co-conspirators applied for a PPP loan on behalf ADR. The PPP loan application contained false and fraudulent representations as to ADR's number of employees and average monthly payroll. The false and fraudulent PPP loan application on behalf of ADR was submitted via interstate wires to a participating SBA approved lender that authorized a PPP loan in the amount of approximately $187,500. The $187,500 in PPP loan funds was deposited into a bank account in the name of ADR.

13. Upon receipt of the PPP loan funds for ADR, **PEREZ,** at CC-1's direction, wired approximately $93,750 in PPP loan proceeds from the ADR account to an account in the name of a company under the control of CC-1.

14. As part of the scheme, co-conspirators applied for a PPP loan application on behalf Shield. The PPP loan application contained false and fraudulent representations as to Shield's number of employees and average monthly payroll. The false and fraudulent PPP loan application on behalf of Shield was submitted to a participating SBA approved lender that authorized a PPP loan in the amount of approximately $203,800. The $203,800 in PPP loan funds was deposited via interstate wires into a bank account in the name of Shield.

15. Upon receipt of the PPP loan funds for Shield, **PEREZ,** at CC-1's direction, withdrew approximately $101,750 in PPP loan proceeds from the Shield account and used those proceeds to purchase approximately 15 Cashier's checks. **PEREZ,** at CC-1's direction, made the Cashier's checks payable to different individuals who **PEREZ** did not know and provided those Cashier's checks to CC-1.

## OVERT ACTS

16. In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one of the co-conspirators committed and caused to be committed, in the Houston Division of the

Southern District of Texas and elsewhere, at least one of the following overt acts, among others:

17. On or about June 18, 2020, a PPP loan application on behalf of ADR seeking approximately $187,500 in PPP loan funds was submitted to an SBA approved lender.

18. On or about August 5, 2020, PPP loans funds in the amount of $203,800 were deposited into a bank account in the name of Shield.

19. On or about August 7, 2020, **PEREZ** withdrew approximately $101,750 in PPP loan funds from the Shield account and purchased 15 Cashier's checks.

All in violation of Title 18, United States Code, Section 371.

## NOTICE OF CRIMINAL FORFEITURE
### (18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c))

20. Pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), the United States gives notice that upon the defendant's conviction of Count One of this Information, the United States will seek forfeiture of all property, real or personal, which constitutes or is derived from proceeds traceable to the conspiracy.

21. The United States also gives notice that it will seek a money judgment against the defendant.

22. In the event that one or more conditions listed in Title 21, United States Code, Section 853(p) exist, the United States will seek to forfeit any other property of the defendant up to the amount of the money judgment.

Jennifer Lowery
Acting United States Attorney
Southern District of Texas

Joseph S. Beemsterboer
Acting Chief, Fraud Section
Criminal Division
U.S. Department of Justice

By: *Rodolfo Ramirez*
Rodolfo Ramirez
Assistant United States Attorney
Southern District of Texas
RRamirez3@usa.doj.gov
(713) 314-6024

Della Sentilles
Louis Manzo
Trial Attorneys
Criminal Division, Fraud Section
Della.Sentilles@usdoj.gov
(202) 445-8793 (Sentilles)